Benecke v. Barnhart Mark Caldwell v. Social Security Yes, counsel, please try to keep track of the two minutes yourself. I'll try to remind you, but it's your responsibility. It has a what? Oh, well, you just lost a little time. Go ahead. I thought she wanted her benefits. That's what I'm saying. There were two cases before the court, one before the two minutes before the benefit, the other asking for remand in terms of proceedings. In other words, she got half of them, not a whole lot. I checked this morning, and Barnhart has not been overruled. And I think that is the essence of this case. We are dealing with an abuse of discretion standard. But really what we're dealing with is whether the district court committed an error of law by definition of an abuse of discretion. Remand for the proceedings rather than for outline of your benefits. The commissioner knows that no decision of this court has held that a district court abuses discretion by remanding for further administrative proceedings rather than for award of benefits. And I believe that's true. But I don't know if that's an insurmountable error. The basic law remains the same. In this case, the district court, and what I thought was a very good decision over the last two cases, gave controlled weight to the opinions of the treating physicians, in this case the rheumatologists. Those opinions, they should be consistent with the ability to sustain work on a regular and continuing basis. Well, they're taking your appeal. The only issue you're raising is yours is the only appeal. The issue that you're raising is whether, given the district court's findings, which are not challenged, the record is so clear that she cannot perform any work in the economy that we should direct the award of benefits. And your argument, I gather, is that the medical testimony is such that there is no possible job she can perform. And that's something we can tell from the record, is that it? It is. Let me just take it one step further. There's no job that she can perform on a regular and continuing basis. Yes. And we determined that from what in the record? From Dr. Pace's assessment form, from Dr. Gluck's assessment form. Primarily those were the two treating rheumatologists who gave opinions. Both of those assessment forms gave limitations that are facially inconsistent with the ability to work 8 hours a day, 5 days a week. There is, I don't know if it's gotten to you yet, but there is a case that this Court decided on Tuesday, and I faxed over it. Yes, we have received it. Well, another thing that disturbed me about that case, and I'll only draw your attention if it really isn't in my favor, is one of the reasons the Court gave there for allowing justification for the fact that the patient was in a checklist or checkmark form, and let's be honest, that's the point of the case of Dr. Gluck, that was one. The problem with the Batson case is all of the sentences, that's a checkmark form. We don't know what kind of checkmark form. Is it a checkmark that says can work, can't work? Well, I can see the argument that that's not an opportunity to carry today. What we have here is something considerably different. Here we have assessment forms that were particularly tailored toward an assessment of fibromyalgia, and we have assessment forms that gave specific function-by-function limitations. That's a far cry from the kind of assessment, for example, that the Harmon Court was looking at, where the physician basically just gave a legal conclusion, this person can't work. We don't have that here. We have very specific assessments, and that's what I think distinguishes this case from Batson. I think it distinguishes it from Harmon as well. And, of course, the biggest distinction in Harmon, which, as you know, Harmon was the only case that said there was vocational expertise testimony about his limitations. The biggest difference with Harmon is that Harmon had a specific defense counsel. The ALJ never saw it. Here the ALJ had everything that we're looking at here today, and we just have to cross ourselves under Barney and Ocasio and Cohen and a whole line of cases. It's the fact that the ALJ had everything in front of it and just didn't look at it properly enough to say, well, here's a second bite of the apple. I would say they've done. The commissioner has cited, as the commissioner should, two recent cases that remain to be reported benefits. Unell, which was decidedly reliable here, and Conant, which was decidedly obvious in the last few years. Those don't cover this case in much detail. In Unell, the claimant's testimony was not patiently consistent with the ability to perform sedentary work on a regular and continuing basis. That is not the situation we have here. On its face, the evidence that was credited by the district court precludes the ability to sustain work. More troubling is the Conant decision, which stated in the court, we are not convinced crediting as true the doctrine is mandatory in the Ninth Circuit. I don't know what's negative of that. Reading Barney and Ocasio-Cortez, I wouldn't list all those cases, but you know what they are. I just can't understand how that can't be mandatory once it is found that the ALJ failed to give adequate reasons for rejecting the evidence and the evidence is such that we accept it and clearly require finding a disability. The other problem with Conant's case is twofold. One, the claimant's court denoted analysis of what factors should determine whether there should be a remand for crude or pristine support for award of benefits. It simply said we have flexibility and we're exercising it. Well, I grant there's flexibility. That's what discretion is all about. But why should discretion be exercised in one fashion? Well, the government offers a theory, which is that one way to harmonize these cases in which the court did not apply the crediting as true rule is to apply it as prudential. Then they say you apply the rule when the weight of evidence suggests that the improperly rejected evidence probably is true and where there has been undue delay in resolving the claimant's case. If that's the standard that we should adopt, then we should look at this evidence and see whether what the doctor said was probably true and whether there has been an undue delay. Now, the government says that you have not the claimant has not waited an unduly long time for resolution of her claim because she filed her application for benefits being disabled and I assume supposed to have these benefits to live on. And she's only waited since March 1999. And the government thinks that's not very long. Five years to wait for benefits. Do you agree with the government that waiting five years for disability benefits is not a long time? Of course not. Let me point something out. I'm coming up on my rebuttal time, so I want to finish up here quickly. Client relied on Byrds v. Shalala. Jimmy Byrds was my client. Do you want to know what happened to Jimmy Byrds? He died before an administrative determination was made on his claim. As the reason for accrediting this true document. May I reserve the rest of my time? Yes, please. Thank you. Good morning, Your Honors. I am Pamela M. Wood, Commissioner of Social Security. The District Court did not refuse discretion to remand in this case further administrative proceedings for a number of reasons. First, 42 U.S.C. 405G expressly provides the authority for such an action. Second, the Supreme Court has provided guidance in Ventura for electing to make such a decision. And that guidance is that, accepting the rare circumstances, the proper course of the proper course is to remand the case to an administrative agency for additional investigation or explanation. Well, that's an immigration case, isn't it? And isn't that, like, country condition issue? Wasn't Ventura a country condition issue in an immigration case? Even further afield. It is an I.M.S. case, but the Supreme Court did not, as appellate convenience, Well, I guess what you really need to be trying to persuade us of, what else needs to be decided to determine whether this individual gets benefits?  Well, there's no question of that. The question is whether it abused its discretion. The fact that you have discretion doesn't mean you can do anything you want. I think it would be a good idea if you answered Judge Fletcher's question. Since she asked you a question. And the question is, what do you think needs to be done if it were remanded? That was the question. But what are the issues that are still open as to whether this individual should get benefits? Well, in this case, if it was remanded for further proceedings because of what the district court received as the effective In this case, the medical evidence is simply contradictory regarding the objective medical findings are contradictory, and they do not support these two treaty positions' conclusions. Now, it may be true that they were. Are you suggesting that she does not have this polymyalgia? I don't think it's contention that she does not have polymyalgia. The issue is, which was before the district court, was what limitations that resulted in. And while it is true that her two of the treaty positions used these comprehensive RFC forms, those forms, those conclusions on those forms simply were not supported by these two treaty positions on objective medical findings. Now, don't we have to credit her own subjective testimony as to her pain? Yes or no? No, Your Honor. The cases all say that we do. No, the cases do not say that we do. I would just pretend we're disagreed on. That brings me to the first point I was talking about before. The district court would not have used discretion for the third reason because, in my opinion, it clearly demonstrated that the district court has discretion in remanding cases for further proceedings, Well, you know, it doesn't do any good to convince us that the district court has discretion. We have hundreds of cases about whether a district court abused its discretion. Sometimes it can do things. Sometimes it doesn't. So to keep telling us it has discretion doesn't help. Well, part of the argument seems to be, part of the count's argument seems to be, in fact, that there really is no discretion. That these allegations must be credited as true. And the government's position is that that simply is not the case and that they were freed from it. And that the school has, in fact, said that that's not the case. Well, okay. But here, the district judge found that he could not disregard the opinion of the treating physician because he didn't give specific and legitimate reasons. There was no evidence to support his conclusion. Now, hold on. What are we supposed to do? Time after time send it back to an ALJ and say you didn't give the right reasons last time. Now give them again. And then he gives you another set of phony reasons. And then it comes up again and you're going to tell us, no, send it back, because let him keep giving you reasons. They're not legitimate reasons. That's the test. He has to give legitimate is the word, specific and legitimate reasons. The district court said these are not specific and legitimate reasons. Now, that's not an issue that hasn't been considered. It's an issue that has been. And the agency was wrong. So you want us to keep sending it back so they can try again? That's right. They made their decision. They made findings. These are the findings. And you're not challenging the findings. They did not give specific and legitimate reasons. Now, you want us to send it back so that they can try again? Yes, Your Honor. Okay. So there's no way they can ever end this cycle. Pardon? It's only been five years so far. And there's no way we'll ever end it, because the next time your agency gives phony reasons, you're going to come back and tell us, well, we should remand it, because let the agency try again. Your Honor, I, again, respectfully disagree with your interpretation of the reasons that they already gave when I said these conclusions as phony. They may not have been sufficient for. They may not have been legitimate is the word. Let's call them illegitimate instead of phony. Well, I would disagree with that. Well, disagree, this is the word. The word is that they are not legitimate. I'm reading from the district court's decision. Those are the findings which you have not challenged. We did not challenge those findings, Your Honor, simply because it is satisfied. Whatever your reason, you didn't challenge them. With the conclusion, it's not with the findings, it's just my presumptive conclusion that they're both valid. Well, as I'm sure you know, you have a right to cross-appeal. You could have challenged the findings, and you did not. So we are starting here from the premise that these are illegitimate findings, since you don't like phony. Your Honor, but those findings were used to justify the district court's decision to remand the case for further proceedings rather than to remand for payment. And the issue before us is whether that is the proper consequence of those findings. Now we're getting down to the issue. We have findings that his reasons for rejecting the testimony were not legitimate. Now the question that we have before us is, does that mean we should remand so that they can try again? Is that a proper exercise of discretion? Or once your agency has had the chance and considered the issue and done it incorrectly, should they again be given a chance while a disabled person waits another five years to get benefits? That is the option of the district court, Your Honor, and is absolutely correct. Well, it may not be unusual, but it's certainly unfortunate for disabled people. It may be unfortunate, Your Honor, but I would respectfully suggest that first and foremost, in order to address that problem, that Congress would need to provide additional funds for expansion of the agency. That would be a very good idea. I hope you go back and tell the agency to ask Congress for more funds. That would be an excellent idea, and good luck to you. Well, exactly. Exactly, Your Honor. But I will also say that this agency and its employees operate under many, many, many productivity and quality standards, and yes, it takes some time to get this system to thrive. Again, I must say, this was raised in your brief as to one of the factors to consider is the length of time. And you asked us to use that as one of the two factors in our prudential examination. And I don't know what you consider to be an improper length of time for someone who's disabled to wait for benefits. Now, I don't want to blame it on the people who work in the agency. Let's just talk about the United States government. I understand that the agency does not get the treatment it might from the Congress or our president. But none of us can do anything about that. But we can consider, as you suggest, in deciding what should happen to a case, whether someone who's disabled and doesn't have benefits should be forced to wait more than five years while agencies make errors. Well, again, I think that this is just a brief report, and that that was not an easy discretion to make. And as soon as we may, we may have to take some further decisions. Thank you, counsel. Have a good trip back. Are you from Washington? Am I? I'm originally from Oklahoma. Oh, no, no, no. I mean, are you here from the... We're from Denver. From Denver. Okay. Well, have a good trip back to Denver. Okay. Counsel? I understand that the district judge sent it back because he thought there was insufficient vocational. Excuse me, Judge, I can't hear you. Okay. I thought the district judge sent it back because he thought there was insufficient vocational information. After he said, you know, the treating physicians have said this, and there was no good reason to reject that. So I guess I want to hear about whether there's enough vocational information. You know, if it was just the psychologist, Dr. Green, that would be the only evidence we have. I would have to agree with any sense of that. But Dr. Green, it's like the other aspect of this. He's screaming on the court. As a matter of fact, if I recall, I find that I choose preferentially that result of the examination. That's the only thing he was willing to have when he talked about a need for vocational instruction. But that isn't the essence of this case at all. The essence of this case is we treat it with the politics. We treat it with primary intelligence. And that's where I'm focusing on. Is it your position that this case would not need the evidence of a vocational expert, based on the medical evidence, that you could go, assume we're in the original proceeding, that you would be entitled to benefits without any vocational expert testimony? Yes, Judge. And I realize that is somewhat unusual posture. However, this is not the first time this Court has done it, and I think there is no vocational expert testimony in the Court in relation to the benefits. The difference of this case from most cases, such as Harvard, is that the limitations set forth by the treatment of intelligence are patiently inconsistent with the ability to perform work within the activity. And I'm talking about things that go either way, like fine manipulation or postural limitations, or things like that. This is what I would have to do if this went back a further proceeding. If I may interrupt, Mr. Vocational Expert, I'd like to ask you a question. First question. Assume a person who claims age, education, and past relevant work, who cannot sustain work-related activities, has to lie down an hour and a half a day. Are there any jobs that that person can perform on a sustained basis in the national environment? Second question. I'd like you to assume an individual who claims age, education, and past relevant work, who can sit, stand, and walk for a combination of less than eight hours a day. Are there any jobs that that person can perform on a regular, continuing basis, meaning living hours of 85 days a week? That would be a ludicrous thing for me to do, I'm sure. That's why I'm not the trial counsel in this case. That's why the trial counsel can do it. You want to ask somebody who can't walk, they're willing to walk. And that's why I think this case is distinguishable from some of the other cases where this court rightly and correctly said, this has to go back for a vocational expert testimony. This is not one of those cases. My time is up. Thank you, counsel. Thank you both. The case just argued will be submitted. The next case on the calendar is Schnauz versus Barnhart. Hello again. Let me start out with the critical question. Excuse me, Your Honor. My clock says that I... Here we are. Well, you're not down to a minute. Okay, now we're going. I didn't mean to interrupt you, Judge, but I only had a minute as you started talking. Well, my thing, it gave you 20 minutes, so it's interesting. But I think we need to get right to the heart of the matter. If this goes...
judges: B. Fletcher, Reinhardt, Restani